Filed 2/18/25  P. v. Quiles CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRENDAN RENE QUILES,<br><br>    Defendant and Appellant. | H051587<br>(Santa Clara County<br> Super. Ct. No. C1501990) |

In 2017, a jury found defendant Brendan Rene Quiles guilty of first degree felony murder of Sean Wofford (Pen. Code,[1] §§ 187, 189) and found true a robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)(A)).  The jury, however, found not true an allegation that Quiles personally and intentionally discharged a firearm and caused Wofford's death (§ 12022.53, subd. (d)).  The trial court sentenced Quiles to life in prison without the possibility of parole.

In 2020, on direct appeal, a different panel of this court (hereafter, the *Quiles* court) affirmed the judgment.  (See *People v. Quiles* (Dec. 28, 2020, H045800) [nonpub. opn.] (*Quiles*).)  In rejecting a claim of instructional error as to the robbery-murder special circumstance allegation, the *Quiles* court opined "the jury found beyond a

---

[1] All further unspecified statutory references are to the Penal Code.

reasonable doubt that Quiles was the actual killer who committed an act that caused Wofford's death." (*Id*. at p. 42.)

In 2022, Quiles filed a petition in the trial court to vacate his murder conviction and be resentenced under section 1172.6. The trial court denied Quiles's petition at the prima facie stage, finding that the record of conviction established he is ineligible for relief as a matter of law because he was the actual killer.

In this appeal, Quiles contends the trial court erred because the trial record allows the possibility that the jury convicted him of felony murder without finding that he was the actual killer.

For the reasons explained below, we affirm the trial court's order denying Quiles's petition.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Trial Proceedings*

1. Charges

In September 2016, the Santa Clara County District Attorney filed a first amended information (information) charging Quiles and a codefendant, Christopher Azure, with the murder of Wofford (§ 187; count 1 [Jan. 9, 2015]) and Quiles, alone, with resisting an officer (§ 148, subd. (a)(1); count 2 [Jan. 11, 2015]). Attendant to the murder count, the information alleged that Quiles personally and intentionally discharged a firearm and proximately caused Wofford's death (firearm use allegation) (§ 12022.53, subd. (d)). The information also alleged that the murder was committed while Quiles and Azure were engaged in the commission or attempted commission of a robbery (special circumstance allegation) (§§ 190.2, subd. (a)(17), 211, 212.5).[2]

_____

[2] The information included additional counts charging Azure, alone, with voluntary manslaughter (§ 192, subd. (a); count 3) plus an attached firearm allegation (§ 12022, subd. (a)), second degree robbery (§ 211, 212.5, subd. (c); count 4), and conspiracy to sell marijuana (§ 182, subd. (a)(1); count 5). Pursuant to a negotiated

2

## 2. Trial Evidence

The prosecution presented evidence to the jury in March–April 2017, including testimony from Azure. Quiles presented one witness in his defense—an audio forensic analyst who sought to enhance the clarity of speech in a video recording.

A description of the trial evidence appears in the *Quiles* opinion.[3] (*Quiles*, *supra*, H045800, at pp. 2–10.) In the present appellate briefing, both parties quote, in full, the "Trial Evidence" section from *Quiles*. Under these circumstances, we incorporate the *Quiles* court's description of the trial evidence. (*Ibid*.)

In brief, the trial transcripts demonstrate the following: Azure testified that he and Quiles devised a "plan" to steal a "[h]alf pound of marijuana." Quiles said that he "wanted to rob the person that [they] were buying the marijuana from." Azure arranged the drug deal and was tasked with "mak[ing] sure that the person had the marijuana." Wofford arrived with the marijuana and parked in a lot across the street from Azure's residence. As Wofford and Azure sat inside Wofford's car with the marijuana, Quiles opened the driver's side door while holding a gun in the air and yelled "Give me everything you got." At that point, Azure "had opened the door and gotten out [of the passenger side of Wofford's car] and went back to [Azure's] house." Subsequently,

---

agreement, Azure pleaded guilty to voluntary manslaughter, robbery, and conspiracy to sell marijuana in exchange for a sentence of 14 years in state prison.

[3] The *Quiles* opinion is included in the instant appellate record because the district attorney attached it as an exhibit to an opposition he filed in the trial court. The district attorney also attached, inter alia, the reporter's transcripts and clerk's transcripts prepared for Quiles's direct appeal. In the trial court, Quiles objected to the "statement of facts" in the district attorney's opposition, because that statement was "based on a summary of the Court of Appeal decision." Notwithstanding any limitation on the use of the evidentiary summary provided in a prior appellate opinion (see *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183), the record of conviction germane to this matter properly includes all the documents attached to the district attorney's opposition. (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1232 (*Beaudreaux*); *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1269; *People v. Allen* (2023) 97 Cal.App.5th 389, 395, fn. 4.)

Azure sent an instant message to his girlfriend saying he had "[j]ust jacked someone." In addition, Quiles told Azure that he (Quiles) "had shot him" (Wofford).

Quiles's girlfriend D.V.[4] testified that when she confronted Quiles about a newspaper article reporting a person had been shot and killed in a car, Quiles "just said he didn't mean to do it."

The prosecution introduced a recorded conversation between Azure's brother and Quiles in which Quiles said that Azure "didn't even do nothin.' "

Police found a "shell casing approximately 10 feet" away from the car in the parking lot. According to the medical examiner, Wofford suffered "a gunshot wound of entrance involving the upper left arm and a corresponding gunshot wound of exit on the right chest." The trajectory of the bullet was "left to right and downward."

### 3. Instructions and Closing Arguments

The trial court instructed the jurors on the general principles of homicide as follows: "Homicide is the killing of one human being by another. Murder is a type of homicide. The defendant is charged with murder." (CALCRIM No. 500.)

The trial court instructed the jurors on one theory of murder—felony murder—with CALCRIM No. 540A: "The defendant is charged in [c]ount 1 with murder under the theory of felony murder. [¶] To prove that the defendant is guilty of first degree murder under this theory, the People must prove that, one, the defendant committed or attempted to commit the crime of robbery; two, the defendant intended to commit the crime of robbery; and three, while committing or attempting to commit the crime of robbery, *the defendant caused the death of another person*. [¶] A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent. To decide whether the defendant committed or attempted to commit the crime of robbery, please refer to the separate instruction I will give you on that crime. You must apply

---

[4] To protect the witness's privacy, we refer to her by her initials. (Cal. Rules of Court, rule 8.90(b)(10).)

those instructions when you decide whether the People have proved first degree murder under a theory of felony murder. [¶] The defendant must have intended to commit the felony of robbery before or at the time he caused the death. The crime of robbery continues until a defendant has reached a place of temporary safety. It is not required that the person die immediately as long as the act causing death occurred while the defendant was committing the felony." (Italics added.)

The trial court instructed the jurors with CALCRIM No. 3149 on the firearm use allegation, stating in pertinent part: "If you find the defendant guilty of the crime charged in [c]ount 1, you must then decide whether the People have proved the additional allegation that the defendant personally and intentionally discharged a firearm during that crime causing death. [¶] To prove this allegation, the People must prove that, one, the defendant personally discharged a firearm during the commission or attempted commission of that crime; two, *the defendant intended to discharge the firearm*; and three, *the defendant's act caused the death of a person*." (Italics added.)

The trial court instructed the jurors with CALCRIM No. 730 on the special circumstance allegation, stating: "The defendant is charged with a special circumstance of murder committed while engaged in the commission of a robbery in violation of Penal Code [s]ection 190.2[, subdivision] (a)(17). To prove that this special circumstance is true, the People must prove that, one, defendant committed or attempted to commit the crime of robbery; two, the defendant intended to commit the crime of robbery; and three, *the defendant did an act that caused the death of another person*. [¶] To decide whether the defendant committed or attempted to commit the crime of robbery, please refer to the separate instruction I've given you on that crime. You must apply those instructions when you decide whether the People have proved this special circumstance. The defendant must have intended to commit the crime of robbery before or at the time of the act causing death. [¶] In addition, in order for this special circumstance to be true, the People must prove that the defendant intended to commit the crime of robbery

5

independent of the killing.  If you find that the defendant only intended to commit murder and the commission of robbery was merely part of or incidental to the commission of that murder, then the special circumstance has not been proved."  (Italics added.)

In closing argument, the prosecutor maintained that Quiles "shot and killed Sean Wofford during a drug . . . rip-off."  The prosecutor argued:  "So the evidence is Sean Wofford was shot once and killed from that single shot during the commission of a robbery.  So somebody committed or attempted to commit the crime of robbery.  Somebody intended to commit the crime of robbery, and somebody caused the death of another person.  That person was Brendon Quiles."  The prosecutor added, "There's no evidence to put Azure as the shooter."

Quiles's defense counsel argued that Quiles "did not shoot Sean Wofford" and there was no "forensic evidence that Mr. Quiles was at the scene."  Rather, Azure "set up someone to get robbed[] and killed someone."  Counsel contended, "This is a case where everything points to Mr. Azure being the shooter."

4.  <u>Verdicts and Sentence</u>

In April 2017, the jury found Quiles guilty of first degree felony murder (count 1) and found true the attendant special circumstance allegation.  The jury found not true the firearm use allegation.  The jury also found Quiles guilty of resisting an officer (count 2).

In March 2018, the trial court sentenced Quiles to life in prison without the possibility of parole on count 1 and 30 days in county jail (deemed served) on count 2.

B.  *Direct Appeal*

Quiles raised several claims on direct appeal, including that the jury's not true finding on the firearm use allegation "supports a finding that he was not the actual killer" and, thus, "the jury's true finding on the robbery-murder special circumstance [citation]

must be reversed because the jury was not instructed with CALCRIM No. 703."[5] (*Quiles*, *supra*, H045800, at p. 36.)

In December 2020, the *Quiles* court rejected the claim of instructional error for two reasons. First, the court decided that Quiles invited the error, because his "counsel expressly agreed to exclude CALCRIM No. 703 and had a clearly implied tactical purpose." (*Quiles*, *supra*, H045800, at p. 40.) Second, and alternatively, the court rejected Quiles's claim on harmless error grounds. (*Id*. at p. 42.)

In deciding harmlessness, the *Quiles* court noted that "the prosecutor in this case did not argue that Quiles was guilty as an aider and abettor. [Citation.] The prosecutor expressly argued that Quiles was the one who shot Wofford." (*Quiles*, *supra*, H045800, at p. 41.) The court further explained that "the jury instructions reflect that the jury convicted Quiles based on the theory that he was the actual killer, not an aider and abettor. The jury was instructed with CALCRIM Nos. 540A and 730. CALCRIM No. 540A, the instruction on felony murder where the defendant allegedly committed the fatal act, requires the jury find that Quiles 'caused the death of another person.' Likewise, CALCRIM No. 730 requires that Quiles 'did an act that caused the death of another person.' *In other words, when it reached its verdict, the jury found beyond a reasonable doubt that Quiles was the actual killer who committed an act that caused Wofford's death*." (*Id*. at pp. 41–42, italics added.)

The *Quiles* court continued: "Accordingly, even if we assume that the trial court erred in failing to give CALCRIM No. 703, any error was not prejudicial and was harmless beyond a reasonable doubt. . . . Any failure to instruct on the elements of being a major participant and acting with reckless indifference was harmless because those

_____

[5] CALCRIM No. 703 sets forth the requirements for finding a felony-murder special circumstance when the defendant "is guilty of first degree murder but was not the actual killer." The requirements include harboring an intent to kill or major participation in the crime with reckless indifference to human life. (See *People v. Mil* (2012) 53 Cal.4th 400, 408–409; § 190.2, subds. (c), (d).)

elements are required only when a jury finds that a defendant was *not* the actual killer." (*Quiles*, *supra*, H045800, at p. 42.)

The *Quiles* court likewise rejected Quiles's argument that "the jury necessarily found that he was not the actual killer because it did not find the firearm enhancement under section 12022.53, subdivision (d) to be true." (*Quiles*, *supra*, H045800, at p. 42.) The court explained, "There is nothing incompatible with the jury's determination that the People proved beyond a reasonable doubt that Quiles fired the fatal shot—and was the actual killer—but failed to meet its burden of proof to show that Quiles *intentionally* discharged the firearm as required under section 12022.53, subdivision (d)." (*Id*. at pp. 42–43.)

Additionally, the *Quiles* court rejected Quiles's claim challenging the constitutionality of the felony-murder special circumstance under the Legislature's posttrial modifications to the felony-murder rule through Senate Bill No. 1437 (2017– 2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015, §§ 2, 3). (*Quiles*, *supra*, H045800, at pp. 43–46.)

C. *Petition for Resentencing*

In November 2022, Quiles filed an amended petition for relief under section 1172.6 (petition). Quiles asserted, inter alia, that he was "not the actual killer," and "[t]he jury was not instructed that [his] liability for felony murder required a finding that [he] personally killed the victim," only that he had " 'caused the death' of another person." Quiles also mentioned the jury's not-true finding on the firearm use allegation.

The district attorney opposed Quiles's petition. The district attorney contended that Quiles was conclusively determined to have been the actual killer of Wofford, both by the jury and, after Senate Bill 1437 became effective, by the *Quiles* court and, thus, was ineligible for resentencing as a matter of law. The district attorney also noted that "[t]here was neither argument nor instruction on imputed malice, accomplice liability, or alternative theories to find Quiles guilty of murder." In addition, the district attorney

8

contended that collateral estoppel applies to Quiles's current assertion that he was not the actual killer and precludes him from relitigating that claim in the instant proceeding.

Quiles, through appointed counsel, replied to the opposition. Quiles asserted, inter alia, that his factual allegations must be accepted as true, the jury did not make a finding that he was the actual killer (citing *People v. Lopez* (2022) 78 Cal.App.5th 1 (*Lopez*) and *People v. Vang* (2022) 82 Cal.App.5th 64 (*Vang*)), and nothing in the record rendered him ineligible for relief as a matter of law. Quiles noted that in March 2023 (after his trial and direct appeal), CALCRIM Nos. 540A and 730 were revised to require a finding that the defendant " '*personally committed* (an/ the) act[s] that *directly* caused the death of another person.' " (Boldface omitted & italics added.)

Quiles contended that the requirements for issue preclusion were not satisfied, because "[t]he issue raised in [the] petition is not identical to any issue decided" by the *Quiles* court on direct appeal and the instant issue "was not 'actually litigated' in the direct appeal." Quiles further asserted that an exception to the issue preclusion doctrine should apply because the law had changed to "now make clear that 'caused the death of another' does not equate to 'actual killer.' " (Italics omitted.)

The trial court held a hearing on Quiles's petition. On November 9, 2023, the court filed a written order denying the petition. The court concluded that Quiles is ineligible for resentencing as a matter of law because the record of conviction establishes that he was the actual killer.

In its order, the trial court noted the *Quiles* court's "holding" that " 'the jury found beyond a reasonable doubt that Quiles was the actual killer who committed an act that caused Wofford's death.' " Regarding Quiles's trial, the court explained that "[t]he undisputed evidence presented at trial was that a single gunshot wound, passing through the heart, killed Sean Wofford. There was no dispute over causation or any alternative theory regarding what killed Mr. Wofford." The court stated that the trial "turned on whether the jury believed Azure or Quiles was the shooter. The prosecution's argument

9

was that Quiles was guilty of felony murder because he shot and killed the victim while Azure was no longer even present. The defense argued just the opposite, that Azure was the shooter and it was Quiles who was not present. [Citation.] There was neither argument nor instruction on imputed malice, accomplice liability, or alternative theories to find Quiles guilty of murder."

The trial court noted that the prosecution had explained to the jurors in argument that they could find Quiles guilty of felony murder " 'even if the killing was unintentional, accidental, or negligent.' " The court found this explanation "significant because there was evidence from which the jury could have concluded Quiles fired the fatal shot unintentionally: when admitting the murder to D.V., Quiles told her he didn't mean to do it."

The trial court decided that all the elements of issue preclusion were met, explaining that Quiles "did raise and 'actually litigated' the issue of whether he was the 'actual killer' in his [direct] appeal." The court rejected Quiles argument that this matter should be excepted from the application of the preclusion doctrine, finding that "the doctrine would serve its underlying fundamental principles of promoting efficiency while ensuring fairness to the parties in the present action." (Italics omitted.)

Lastly, the trial court concluded that because the record of conviction established that Quiles was the " 'actual killer,' " "any purported error" at Quiles's trial arising from the use of the then-current versions of CALCRIM Nos. 540A and 730 "was harmless under any standard. [Quiles] was convicted on a murder theory that remains valid after Senate Bill 1437. As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer.' "

## II. DISCUSSION

Quiles contends the trial court erred by denying his petition at the prima facie case stage because the trial record allows the possibility that the jury convicted him of felony murder without finding he was the actual killer. Quiles argues that "some degree in

10

weighing the evidence, including evaluating Azure's credibility" is required "to conclude that Quiles was the actual killer." He analogizes this matter to *Lopez*, a case in which the Court of Appeal reversed a trial court's summary denial of a section 1172.6 petition. In addition, Quiles contends the *Quiles* court's conclusion that the jury found him to be the actual killer does not have an issue-preclusive effect on this section 1172.6 proceeding.

The Attorney General responds that because Quiles's jury was not instructed on proximate causation, accomplice liability, or aiding and abetting, and the prosecution and defense both maintained there was only one perpetrator at the scene when Wofford was shot, "the only way for the jury to find [Quiles] 'caused the death of the victim' was to find that he was the actual killer." The Attorney General further contends the *Quiles* court's conclusion that Quiles was convicted as the actual killer "precludes relitigation of this same issue in the instant petition."

A. *Legal Principles*

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869; see also § 188, subd. (a)(3).)

Senate Bill 1437 added section 189, subdivision (e) (section 189(e)) to narrow the application of the felony-murder rule. (Stats. 2018, ch. 1015, § 3; see *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) "[S]ection 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' [citation] and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' [citation]. Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the

underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . [s]ection 190.2' — that is, the statute defining the felony-murder special circumstance." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*), quoting § 189(e).)

The Court of Appeal in *Vang* concluded that, for the purposes of section 189(e), an " 'actual killer' " is "the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act." (*Vang*, *supra*, 82 Cal.App.5th at p. 88; see also *Lopez*, *supra*, 78 Cal.App.5th at p. 19; *People v. Garcia* (2020) 46 Cal.App.5th 123, 152 [under section 190.2, subdivision (b), "[t]he actual killer is the person who personally kills the victim"].) However, Senate Bill 1437 did not alter "the longstanding rule that a defendant is guilty of felony murder if, while intending to commit a qualifying felony, he personally performs an act that causes death, regardless of whether the fatal act was intentional or accidental." (*Beaudreaux*, *supra*, 100 Cal.App.5th at pp. 1243–1244.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*Strong*, *supra*, 13 Cal.5th at p. 708.) When the trial court receives a petition under section 1172.6 requesting vacatur of a murder conviction and resentencing, and "containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Ibid*., citing *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*), § 1172.6, subd. (c).)

During the prima facie stage of review, the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The prima facie inquiry under section 1172.6,

subdivision (c) is "limited." (*Ibid*.)  The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid*.)  " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.)  Although the court may rely on the record of conviction in determining whether defendant has made a prima facie showing, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972.)  "[A] relevant jury finding is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill 1437 and thus preclude[s] the defendant from making a prima facie case for relief.' " (*Curiel*, *supra*, 15 Cal.5th at pp. 453–454.)

"As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer,' " because an " 'actual killer' " remains liable for felony murder after Senate Bill 1437's amendments to section 189(e).  (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973.)  An allegation that the petitioner could not currently be convicted of a homicide offense because of changes made to homicide law by Senate Bill 1437 "is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)  "This means that if the record of conviction in this case conclusively establishes the jury found facts sufficient to support [petitioner]'s conviction . . . under current law, he has not made his prima facie case." (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1130–1131.)  "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that [] the petitioner was the actual killer." (*Lopez*, *supra*, 78 Cal.App.5th at p. 14.)

13

"We independently review the denial of a resentencing petition at the prima facie stage, whether the denial is based on the issue preclusion doctrine [citation], the law of the case doctrine [citation], or, more generally, failure by the petitioner to make a prima facie showing under section 1172.6." (*Beaudreaux*, *supra*, 100 Cal.App.5th at pp. 1238–1239; accord, *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.) If the denial of the resentencing petition was legally correct, we affirm that denial regardless of the trial court's reasoning. (*People v. Camacho* (2022) 14 Cal.5th 77, 123.)

B. *Analysis*

As an initial matter, we note that the Attorney General does not challenge the proposition that an " 'actual killer' " (*Vang*, *supra*, 82 Cal.App.5th at p. 90) for the purposes of section 189, subdivision (e)(1) and the felony-murder special circumstance "means the person (or persons) who personally killed the victim." (*Id.* at p. 91.) Rather, the Attorney General argues that "[e]ven accepting" *Vang*'s definition of actual killer and "that the versions of CALCRIM Nos. 540A and 730 given at [Quiles]'s trial were deficient, it does not lead to the conclusion suggested by [Quiles] that the jury could have found that his mere participation in the robbery somehow proximately caused the victim's death." The Attorney General further contends that this matter "is distinguishable from *Lopez* because [Quiles]'s jury was not instructed on proximate causation" and "in *Lopez*, the jury heard evidence that there were two persons at the scene when the victim was killed."

We agree. The record of conviction conclusively establishes that Quiles's jurors found he was the person who actually shot Wofford. The jurors considered murder liability for Quiles only under a theory of robbery- or attempted robbery-murder and did not receive any instructions on accomplice liability. The prosecution argued solely that Quiles personally shot Wofford after Azure had exited Wofford's car and left the scene. Quiles's defense counsel argued the opposite—that there was no evidence placing Quiles at the scene of the shooting and Azure was the person who shot Wofford. Neither party

14

contested the fact that Wofford's death was caused by a single gunshot fired by a lone shooter. These circumstances establish that, in reaching their verdicts on felony murder and the special circumstance allegation, Quiles's jurors accepted the prosecution's theory that Quiles, in fact, shot Wofford and rejected Quiles's counterpoint.

Regarding causation, the trial court instructed the jurors that to find the murder count proved and the special circumstance allegation true, the jurors had to find Quiles "caused the death of another person." Similarly, for the firearm use allegation, the court instructed that the prosecution had to prove "[t]he defendant's act caused the death of a person." The court did not provide the jurors any other definition of causation.

The narrow causation instructions provided to Quiles's jurors materially distinguish this matter from *Lopez*. "The defendant in *Lopez* was convicted of first degree murder with a robbery felony-murder special-circumstances finding . . . . [Citation.] The victim was found in his apartment naked and bludgeoned to death. [Citation.] The defendant testified he had been to the victim's apartment with his 'friend and drug dealer,' who he implied was the actual killer. [Citation.] Though the defendant admitted having been in the victim's apartment, he denied killing him or participating in any robbery or even entering the bedroom in which the body was later found. [Citation.] The prosecution argued the defendant was the actual killer and committed the robbery alone, but its case for that theory was largely circumstantial." (*Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1246 [discussing the facts and circumstances in *Lopez*].)

The trial court in *Lopez* provided instruction on causation beyond that provided in Quiles's case. Namely, the trial court in *Lopez* told the jurors: " 'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.' " (*Lopez*, *supra*, 78 Cal.App.5th at p. 16.) Given this instruction, the Court of Appeal in *Lopez* concluded "[t]he jury might have found defendant, though not the actual killer,

15

participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation." (*Id*. at p. 20.)

Quiles argues that the difference between the causation instructions in his case and *Lopez* is immaterial because "[a] lay juror (or anyone else) is likely to understand 'caused' as encompassing both direct and indirect causation." We are not persuaded. The trial court directed Quiles's jurors to apply "ordinary, everyday meanings" to undefined words when deliberating the case. (CALCRIM No. 200.) The dictionary definition of the verb "cause" is "to serve as a cause or occasion of" or "to compel by command, authority, or force." (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/cause> [as of Feb. 14, 2025] archived at <https://perma.cc/J48Q-8YQD>.) That definition suggests a direct causal connection between Quiles's act and Wofford's death. Viewed in the context of the instant instructions (which do not include instruction on indirect causation), the jurors would have applied the ordinary meaning of "caused" in a commonsense fashion to conclude Quiles personally shot Wofford.

The jury's not true finding on the firearm use allegation does not undermine the conclusion that the jurors found Quiles personally shot and killed Wofford. The trial evidence included testimony by Quiles's girlfriend D.V. about Quiles having said he "didn't mean to do it." This evidence supports an inference that Quiles unintentionally discharged the gun and explains the jury's findings that Quiles was liable for felony murder with a special circumstance (which did not require an intentional killing but did require that Quiles committed an act that caused the death of Wofford) but not the attached firearm use allegation (which required an intentional discharge of the firearm).

For these reasons we conclude the record of conviction conclusively establishes—without resort to factfinding involving the weighing of evidence or credibility determinations—that Quiles's jury found beyond a reasonable doubt that he was the

16

actual killer of Wofford. We decide Quiles remains liable of murder under current law and is ineligible for relief under section 1172.6. The trial court did not err in denying his petition at the prima facie stage.[6]

### III.  DISPOSITION

The trial court's November 9, 2023 order is affirmed.

---

[6] Having decided that the record of conviction provides an adequate and independent basis to deny Quiles's petition at the prima facie stage, we need not address whether, under the doctrine of issue preclusion, the *Quiles* court's conclusion that Quiles was found to be the actual killer precludes relitigation of that issue.

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P. J.


_____
Bromberg, J.


**H051587**
*People v. Quiles*